IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff and Counter Defendant, ) ) | Civil Action No.: 11 C 3844 |
| v. ) ) | Suzanne B. Conlon, Judge |
| MERGE HEALTHCARE SOLUTIONS, INC., ) ) ) ) | |
| Defendant and Counter Claimant. ) | |

## MEMORANDUM OPINION AND ORDER

Carolina Casualty Insurance Company brings this action for a declaration of its obligation to pay attorneys' fees under the Directors' and Officers' and Corporate Liability Insurance Policy it issued to Amicas, Inc.[1] Amicas and its directors were sued by Amicas shareholders in state court for claims that were covered by the insurance policy. At the end of the shareholder litigation, the state court ordered Amicas to pay approximately $3.1 million for the shareholders' attorneys' fees. The court calculated this amount by multiplying a reasonable hourly rate by reasonably expended hours to arrive at $630,000, then multiplying that amount by five. Carolina Casualty argues it is responsible for paying only $630,000 of the attorneys' fee award under policy language excluding the "multiplied portion of multiplied damages" from the definition of loss. Carolina Casualty moves for summary judgment, arguing the policy language clearly and

---

[1] Amicas, Inc. was purchased by Merge Healthcare Incorporated and is now known as Merge Healthcare Solutions, Inc. This opinion uses Amicas throughout because most of the events at issue occurred when the company was Amicas.

1

unambiguously supports its position. It also moves for summary judgment on Amicas' three remaining counterclaims of breach of contract, vexatious failure to pay a claim under 215 ILCS 5/155, and bad faith.

## I. Background

The following facts are taken from the parties' Local Rule 56.1 statements, except when discussing the Massachusetts court's memorandum and order awarding attorneys' fees ("Mass. Order"), located in the record at Pl. Ex. B and Def. Ex. B. Because the parties disagree about the interpretation and context of the statements from the order included in the Rule 56.1 statements, the court cites directly to the state court order. The facts are viewed in a light most favorable to Amicas, and Amicas receives the benefit of all reasonable inferences. *Trinity Homes LLC v. Ohio Cas. Ins. Co.*, 629 F.3d 653, 656 (7th Cir. 2010).

### A. The Underlying Litigation: *In re: Amicas, Inc. Shareholder Litigation*, Nos. 10-174-BLS2, 10-412-BLS2 (Mass. Super. Ct.)

Thoma Bravo, LLC, sought to acquire Amicas for $5.35 per share. Def. Facts ¶ 37. The Amicas shareholders thought the amount was inadequate and sued in Massachusetts state court to enjoin the acquisition. *Id.* After the suit was filed, Merge Healthcare Incorporated presented a competing offer of $6.05 per share. *Id.* ¶ 39. On its face, the offer was superior to the Thoma Bravo offer and would result in an additional $26 million for the Amicas shareholders. *Id.*

The attorneys for the plaintiff shareholders believed they would be entitled to attorneys' fees from the $26 million common fund created from the "bump-up" of value from the Merge Healthcare tender offer. Def. Facts ¶ 40. The shareholders' attorneys notified Amicas that they intended to ask the Massachusetts court to place in escrow a portion of the $26 million bump-up

when the sale to Merge Healthcare occurred to cover the $6 million in attorneys' fees it planned to request from the court. *Id.* Because the attorneys' fees would come out of the $26 million bump-up, the shareholders would receive a smaller amount from the sale. To avoid diminishing the fund, the shareholders' attorneys asked Amicas to agree to pay the attorneys' fees itself, rather than having the fees taken from the common fund. *Id.* In Amicas' view, the attorneys' fee demand imperiled the Merge Healthcare transaction because a decrease in the shareholders' return from Merge Healthcare offer could make the original Thoma Bravo offer the superior one. *Id.*

Amicas contacted its insurer, Carolina Casualty, to determine whether the policy would cover an award of attorneys' fees. Carolina Casualty agreed that the definition of "loss" under the policy included an award of reasonable attorneys' fees. Def. Facts ¶ 41. Carolina Casualty stated in a letter that "the Insurer is willing to cover, subject to the Policy's terms and conditions, reasonable attorneys' fees awarded by the court or negotiated with plaintiffs' counsel that are approved by the court." *Id.* ¶ 47 (quoting Def. Ex. I, March 19 letter). Amicas told the shareholders' attorneys the fees would not come out of the common fund. *Id.* ¶ 52.

The Merge Healthcare transaction went through and the Massachusetts court, with the agreement of the parties, dismissed the shareholder litigation as moot but retained jurisdiction for purposes of attorneys' fees. Def. Facts ¶ 54. In Massachusetts, a court has the discretion to award attorneys' fees "[w]here a party has, at his or her own expense, been successful in creating, preserving or enlarging a fund in which other parties have a rightful share." Mass. Order at 3 (internal quotation marks omitted) (quoting *Coggins v. New England Patriots Football Club, Inc.*, 406 Mass. 666, 669 (1990)). The Massachusetts court concluded the shareholder litigation

3

was a substantial cause in creating the $26 million fund for Amicas shareholders and merited a award of attorneys' fees and expenses. Mass. Order at 4.

The parties disagreed on how the fee award should be calculated. The shareholders' attorneys argued the court should award a percentage of the fund and sought 19% of $26 million for a total of $4,940,000. Mass. Order at 4. Amicas argued for the lodestar method based on the reasonable hours expended on the case. *Id.* at 4–5. The Massachusetts court noted that the Massachusetts Supreme Court designated the lodestar method as the "basic measure" of reasonable attorneys' fees for a statutory fee request. *Id.* at 5. The Massachusetts court considered whether the same was true when the fee request was not based on statute but on the creation of a common fund and found no Massachusetts appellate court authorized the use of the percentage method. *Id.* The court concluded the "lodestar remains the appropriate standard." *Id.* The court explained,

> The lodestar approach seems especially appropriate – and the percentage approach especially inappropriate – in a case such as this one, where a large fund was obtained after a brief, albeit, intensive, efforts by plaintiffs' attorneys. . . . To employ the percentage approach in this case, where the lodestar is so relatively modest compared to the fund, is to risk building in a windfall for plaintiffs' attorneys. **The better, and in the Court's view more logical, approach is to begin with the amount of fees reasonably billed, and to look to enhancement of those fees to achieve an award that gives due credit for the risk, complexity, and similar challenges the attorneys faced compared to the extremely favorable result they obtained.**

*Id.* at 5 n.3 (emphasis added). The Massachusetts court determined that even under the lodestar method, the court could enhance the fee award based on "the amount of the fund and its relation to the amount of the requested fee." *Id.* at 6.

The Massachusetts court reduced the billing rates and hours submitted by the

shareholders' attorneys and arrived at a lodestar amount of $630,000 ($450/hour x 1,400 hours). It then applied an enhancement multiplier of five for a total fee award of $3,150,000.[2] Mass. Order at 8. The court concluded an enhancement multiplier was warranted because the attorneys devoted substantial resources to the case without a guarantee of payment, their actions served a public purpose by policing the proposed acquisition, and the $26 million fund was an "exceptionally favorable result." *Id.* at 7. The $3,150,000 award was approximately 12% of the common fund, which the court noted was "well within the spectrum of awards under a percentage of fund approach." *Id.* at 8 n.6. Cross-appeals of the fee award are pending in state court. Pl. Facts ¶ 25.

**B. This Case**

Carolina Casualty refuses to pay the full $3.1 million attorneys' fee award. Carolina Casualty contends it is obligated to pay only the $630,000 lodestar amount and not the enhanced portion under policy language excluding the "multiplied portion of multiplied damages" from the definition of loss.[3] It therefore asserts that it is required to pay only one-fifth the cost of the state court appeal, though it has advanced the full costs of the appeal, subject to repayment. Carolina Casualty filed this suit for declaratory judgment to determine its obligations under the policy. Amicas counterclaimed for breach of the insurance contract, vexatious failure to pay a claim

---

[2] The Massachusetts court also awarded costs and expenses of $22,663. Mass. Order at 8. Carolina Casualty does not contest the policy covers the costs and expenses.

[3] The parties' briefs do not clearly define what they mean by "lodestar amount" and "lodestar method." For purposes of this motion, the court uses "lodestar amount" to mean the result of multiplying reasonable hours by a reasonable rate. "Lodestar method" is the approach to calculate reasonable attorneys' fees based on the lodestar amount, but includes the possibility that the lodestar amount may be adjusted to arrive at a final award.

5

under 215 ILCS 5/155, and bad faith. A fourth counterclaim, breach of contract based on a letter from Carolina Casualty, was dismissed early in the case. *See* Dkt. No. 40 (Opinion of Sept. 21, 2011).

In support of its argument, Carolina Casualty relies on a carve-out to the definition of loss in the policy.

> "Loss" means damages, judgments, settlements and Costs of Defense; however, Loss shall not include civil or criminal fines or penalties imposed by law, punitive or exemplary damages, **the multiplied portion of multiplied damages**, taxes, any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds, or matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

Def. Facts ¶ 33; Pl. Facts ¶ 13 (original emphasis omitted and emphasis added).

## II. Analysis of Carolina Casualty's Declaratory Action

### A. Legal Standard

A federal court sitting in diversity applies the conflict of law rules of the state in which it sits. *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001). Amicas asserts Massachusetts law, not Illinois law, should apply. However, Amicas does not identify any conflict between Illinois and Massachusetts law, and its argument in favor of Massachusetts law is relegated to three sentences in a footnote. In the absence of an identified conflict between the two states' laws, the law of Illinois, the forum state, applies. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 n.1 (7th Cir. 2009). A choice of law analysis is not appropriate at this juncture. *Morisch v. United States*, 653 F.3d 522, 530–31 (7th Cir. 2011); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) ("A choice-of-law determination is required only when a difference in law will make a difference in the outcome").

Carolina Casualty, as the movant, must show there is no issue of material fact that the policy language on its face unambiguously excludes the full attorneys' fee award from the definition of loss. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). The primary objective in construing an insurance contract is to ascertain the intent of the parties as expressed in the agreement. *Schultz v. Ill. Farmers Ins. Co.*, 930 N.E.2d 943, 948 (Ill. 2010). Terms that are clear and unambiguous must be enforced as written using their plain, ordinary, and popular meaning. *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007). A term is ambiguous if it is susceptible to more than one reasonable interpretation, but it is not ambiguous just because the parties do not agree. *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006). If an insurance term is unambiguous on its face, extrinsic evidence is not considered. *Avery v. St. Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 829 n.5 (Ill. 2005).

## B. The Parties' Arguments

Carolina Casualty argues the policy language clearly and unambiguously excludes the attorneys' fee award above $630,000 from the definition of loss because the Massachusetts court obtained that amount by multiplying the lodestar amount by five. Carolina Casualty argues that the actual value of the attorneys' fees is $630,000, and that amount constitutes the "damages" Carolina Casualty is obligated to pay. The additional amount, Carolina Casualty contends, plainly constitutes "the multiplied portion of multiplied damages."

Amicas argues the Massachusetts court's methodology for computing the fee award is irrelevant because the end result is what the court deemed to be reasonable attorneys' fees, and the policy covers reasonable attorneys' fees. Amicas characterizes the fee award as a single,

7

unified award of reasonable attorneys' fees, not as a lodestar amount representing a reasonable fee multiplied by five. Amicas argues Carolina Casualty has not shown the policy unambiguously bars coverage of the full fee award because the policy does not define "damages," and it is illogical to limit "damages" to just the lodestar rate-and-hour calculation of the fee award.

The issue in this case is whether to characterize the attorneys' fee award as a single, unified fee award or as a reasonable attorneys' fee of $630,000 multiplied by five. Carolina Casualty's argument, at first glance, makes sense: the Massachusetts court used a multiplier to arrive at the final fee award. However, a closer look at attorneys' fees both in general and in the particular situation of a common fund case reveals Carolina Casualty's interpretation of the contract is not clearly and unambiguously correct from the face of the contract.

### C. Attorneys' Fees

The Massachusetts court was tasked with determining a reasonable attorneys' fee award in the shareholder litigation. Carolina Casualty argues the $630,000 lodestar amount, before adjustments, is the reasonable fee award covered by the policy. However, "loss" or "reasonable attorneys' fee" is not defined that way in the insurance contract, nor is that definition supported by Massachusetts caselaw about the lodestar method of calculating attorneys' fees. When reviewing attorneys' fees awarded under a Massachusetts statute, the Massachusetts Supreme Court stated "[a] fair market rate for time reasonably spent preparing and litigating a case is the basic measure of a reasonable attorney's fee under State law as well as Federal law." *Fontaine v. Ebtec Corp.*, 613 N.E.2d 881, 891 (Mass. 1993). But the Massachusetts Supreme Court has never held the rate-times-hours calculation ends the inquiry; adjustments may be made to that

8

figure to arrive at the final award. *See id.* at 891–92 (discussing whether enhancement should apply to circumstances of case); *Haddad v. Wal-Mart Stores, Inc. (No. 2)*, 920 N.E.2d 278, 282 (Mass. 2010) (describing lodestar method as "multiplying hours reasonably spent by reasonable hourly rate and then *making any necessary adjustments*" (emphasis added)). *Cf. Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673–75 (2010) (allowing the lodestar amount to be enhanced in "rare circumstances"). The language of the Massachusetts court's order also suggests it did not view the rate-times-hour calculation as the end of the inquiry, relying on an enhancement to fully credit the shareholders' attorneys for their work. Restricting the reasonable attorneys' fee covered under the insurance policy to a rate-times-hour calculation is not supported by Massachusetts law.

This case is further complicated by the fact that this is a common fund case, not a case subject to statutory fee shifting, but the attorneys' fees did not actually come out of the fund. A common law right to a fee award when an attorney creates a common fund for the benefit of a group of people is long established. Since 1882, the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Massachusetts state courts recognize the common fund doctrine as well, subject to the court's discretion. *Coggins v. New England Patriots Football Club, Inc.*, 550 N.E.2d 141, 143 (1990). The common fund doctrine differs from a statutory fee award in that a *defendant* pays the statutory fee award, but the *fund* pays the common fund fee award, spreading the costs of representation among all the beneficiaries of the fund. *See Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252–54 (7th Cir. 1988) (discussing the

difference between the two approaches). In this case, the shareholders' attorneys' claim to fees arises out of the creation of a common fund (the $26 million bump-up), but the parties agreed that the defendant would pay the fee, rather than taking it out of the fund. This situation appears to be outside the typical case, in which a defendant's liability for the other side's attorneys' fees arises from statute or contract and tends to be lower.

Although it is clear that in Massachusetts, the lodestar method is used to calculate statutory fee awards, Massachusetts courts have not explicitly endorsed either the lodestar method or the percentage-of-the-fund method for common fund cases. In the absence of authority for the percentage method, the Massachusetts court here relied on the familiar lodestar method. Had the same suit been brought in federal court in Massachusetts, the court would have had explicit authority to use either the lodestar method or the percentage method. *In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995) ("[W]e hold that in a common fund case the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar"); *see also In re Puerto Rican Cabotage Antitrust Litigation*, MDL No. 3:08–md–1960 (DRD), – F. Supp. 2d –, 2011 WL 4537726, at *4 (D. P.R. Sept. 13, 2011) (Dominguez, J.) (noting percentage method is favored methodology in First Circuit).

Moreover, there is no consensus among jurisdictions as to whether the lodestar or percentage method should be used when the only basis for an award of attorneys' fees is the existence of the common fund. The Supreme Court has suggested in dicta the percentage approach is typically used in common fund cases. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("Unlike the calculation of attorney's fees under the 'common fund doctrine,' where a

10

reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under [42 U.S.C.] § 1988 reflects the amount of attorney time reasonably expended on the litigation"); *see also Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 773–74 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis"). The majority of federal circuits allow a court to use either the lodestar or percentage method in common fund cases. *See In re Thirteen Appeals*, 56 F.3d 295, 307 (1st Cir. 1995) (allowing either); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48–51 (2d Cir. 2000) (same); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) (allowing either, but favoring the percentage method with lodestar as a cross-check); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515–17 (6th Cir. 1993) (allowing either); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (same); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (allowing either, but setting a benchmark of 25% of fund to be adjusted or replaced by lodestar method in court's discretion); *Gottlieb v. Barry*, 43 F.3d 474, 482–83 (10th Cir. 1994) (allowing either with preference for percentage method); *see also Brundidge v. Glendale Fed. Bank, F.S.B.*, 659 N.E.2d 909, 913–14 (Ill. 1995) (allowing Illinois state courts discretion to use either method). Two circuits require district courts to use the percentage method. *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 773–74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993). The Fifth Circuit is alone in mandating the lodestar method. *Longden v. Sunderman*, 979 F.2d 1095, 1099–1100 (5th Cir. 1992). The Seventh Circuit has not adopted either approach, but rather requires courts to use a market-based approach and "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of

compensation in the market at the time." *In re Synthroid Marketing Litig.*, 264 F.3d 712, 717–21 (7th Cir. 2001). The Fourth Circuit has not spoken on the issue.

This review of the caselaw shows that neither Amicas not Carolina Casualty could have predicted which method the Massachusetts court would use, although both were possible. This uncertainty weakens Carolina Casualty's assertion that the reasonable attorneys' fee covered under the policy is limited to a rate-times-hours calculation because, absent policy language to that effect, reasonable attorneys' fees are not limited in that way by courts. Adjustments to the initial rate-times-hour calculation are contemplated. Furthermore, Carolina Casualty does not seem to contest that had the Massachusetts court used the percentage method, the entire fee would be covered. It is a reasonable inference in Amicas' favor that the resulting fee would have been similar under either method. The Massachusetts court cross-checked the reasonableness of the $3.1 million fee award by comparing it to the fund and concluded a 12% award was within the range of other common fund cases. The contract term "damages" in "multiplied portion of multiplied damages" on its face does not clearly and unambiguously restrict reasonable attorneys' fees to a rate-times-hour calculation, nor does the policy language condition full coverage on the court's method of computing reasonable attorneys' fees. Summary judgment on Carolina Casualty's declaratory action is denied.

### III. Analysis of Amicas' Counterclaims

Summary judgment in favor of Carolina Casualty on Amicas' counterclaims is appropriate if the record evidence reveals no genuine disputed fact for trial and Carolina Casualty is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *W. Bend Mut. Ins. Co. v. U.S. Fid. and Guar. Co.*, 598 F.3d 918, 921 (7th Cir. 2010).

### A. Breach of the Insurance Contract

Carolina Casualty's argument that it did not breach the insurance contract rests on its contention that the insurance policy clearly and unambiguously excludes the amount above $630,000 from the definition of loss. For the reasons discussed above, this interpretation is not apparent on the face of the insurance policy. Summary judgment on the breach of contract counterclaim is denied.

### B. Vexatious Failure To Pay

Illinois law allows a party to recover attorneys' fees and an additional penalty if an insurance company vexatiously and unreasonably delays paying an amount due under an insurance policy. 215 ILCS 5/155. The key inquiry is whether there is a *bona fide* dispute about coverage. *Golden Rule Ins. Co. v. Schwartz*, 786 N.E.2d 1010, 1018 (Ill. 2003). Carolina Casualty argues it is asserting a legitimate defense and its position on whether the full fee award is covered is reasonable. Amicas asserts Carolina Casualty "had the undisclosed intention not to pay the reasonable attorneys' fee award if the Massachusetts Court relied on the commonly used lodestar method." Def. Resp. Br. at 14. Although Amicas has not presented evidence in support of its theory, discovery is still ongoing. The court declines to rule on this issue, as it would be premature until discovery concludes. Summary judgment on the vexatious failure to pay claim is denied.

### C. Bad Faith

Carolina Casualty argues it is entitled to summary judgment on the bad faith counterclaim because a common law action for bad faith does not exist in either Illinois or Massachusetts. Carolina Casualty is correct. In Illinois, 215 ILCS 5/155 preempts a common law action for bad

faith. *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900–06 (Ill. 1996); *Busse v. Paul Revere Life Ins. Co.*, 793 N.E.2d 779, 785–86 (Ill. App. Ct. 2003). The case Amicas cites in opposition is plainly inapplicable. *See Cal. Union Ins. Co. v. Liberty Mut. Ins. Co.*, 930 F. Supp. 317, 319–20 (N.D. Ill. 1996) (Castillo, J.). *California Union*, a pre-*Cramer* case, involved "the insurer's defense of claims brought against the insured by a third party," not the scope of insurance coverage, as here. The *California Union* case carefully distinguished between the two types of cases, holding § 5/155 preempts bad faith claims regarding the latter but not the former.

Similarly, in Massachusetts, bad faith claims are brought under statute. *House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co, Inc.*, 705 F. Supp. 2d 102, 111 (D. Mass. 2010) (Gorton, J.). A review of Massachusetts caselaw reveals that claims of bad faith are brought as unfair practices claims under Massachusetts General Laws ch. 93A and 176D. *See Tech. Square, LLC v. United Nat'l Ins. Co.*, Civ. Action No. 04-10047-GAO, 2007 WL 534450, at *14 (D. Mass. Feb. 15, 2007) (O'Toole, J.) (applying Massachusetts law); *Beals v. Commercial Union Ins. Co.*, 808 N.E.2d 824 (Mass. App. Ct. 2004) (discussing bad faith claim in context of ch. 93A and 176D). Amicas has not pointed to a case in which a Massachusetts court considered a freestanding bad faith claim. Summary judgment on the bad faith claim is granted to Amicas.

## IV. Conclusion

Carolina Casualty's summary judgment motion is denied as to its claim for declaratory judgment and Amicas' counterclaims of breach of contract and vexatious failure to pay. Carolina Casualty's summary judgment motion is granted as to Amicas' counterclaim of bad faith.

14

ENTER:

*Suzanne B. Conlon* (signature)

January 13, 2012

Suzanne B. Conlon
United States District Judge